This is a case that also involves jurisdictional questions as well as questions about the merits of the decision of the immigration judge and the BIA. In this case, the BIA made a final, relatively more detailed decision in that it was two paragraphs long, and therefore that is the decision that this court is responsible to consider. The immigration judge, the BIA denied Mr. Kewan protections under the Batter's Spouse Act, and it found that there were three reasons why it should do it. One was because he had a preconceived intent to come to the United States, another because he worked without permission when he was in the United States, and a third because he married a woman the board says he barely knew to facilitate normalization of his immigration status. We contend that none of those reasons is a legal basis to deny him the Batter's Spouse protection that he was found by the Department of Homeland Security to deserve, and because none of them is a legal basis. You know, it may be true, and we can talk about it, and we will, but the IJ made a separate determination starting page 7 of its opinion, saying the court would also deny this man's status as a matter of discretion. So the IJ goes ahead and discusses these issues of statutory eligibility, which you dispute, and then it seems to me makes an independent decision as a matter of discretion. And then if you then turn to the board's decision, the last sentence, I'm sorry, the second to the last sentence is, moreover, the ultimate discretionary judgment arising from those facts are legally sound. I'm sorry, that's the next sentence. Because we agree with immigration judges' adverse discretionary determinations, we need non-addressed response appellate arguments regarding statutory eligibility. So BIA doesn't even look at the statutory eligibility argument, which is what you want to talk about, because it says we agree with the IJ's matter of discretion, and it's pretty well established that we don't have jurisdiction to review discretionary decisions. Actually, why are we here? Because the discretionary elements were three, and none of those is a legal discretionary element. And this Court has said that. But if we don't have jurisdiction, we don't have jurisdiction. That's right. If it's a discretionary decision, it's a discretionary decision. The statute denies us jurisdiction to review discretionary decisions. It's clear it was a discretionary decision. Why is it? How can we even speak to this matter? The purpose is, they say, you can't even get into whether the exercise was good or bad. It was a discretionary decision. No jurisdiction. Yes, but this Court has said that when the discretionary decisions are contrary to precedent, contrary to the statute, and contrary to the law, then the Court, then those discretionary decisions are not a valid basis to deny jurisdiction. What's your best case for that proposition? Well, there's several cases. What's your best case? My best case, again, would be. . . You can penetrate this barrier. I would say that there's the Hernandez case. Well, Hernandez what? This is Ashcroft, C-45, 5-3rd, A-24. Yes, Hernandez v. Ashcroft. And this woman sought suspension of deportation and adjustment of status. And the immigration judge in that case said that because she wasn't living with her husband, that they didn't have any jurisdiction to. . . that she, as a matter of discretion, couldn't get adjustment of status. And there's another great case for the same issue is Medina-Morales, where the BIA denied an adjustment of status because the child. . . because it was a stepson-stepfather relationship, and they said that there wasn't a strong stepfather-stepson relationship. And the Ninth Circuit Court has said that because the statute does not require that there be a strong relationship, that they can't use that as a discretionary basis to deny. Mr. Montague, what I'm interested in is this. Can you point out to me anything in the record where the IJ or the BIA, in the exercise of their discretion, took into consideration whether this was a bona fide marriage and took into consideration that the applicant, the alien here, had not introduced evidence of a bona fide marriage after being told by the IJ that that evidence was not necessary? Are you ready to discuss that issue? Yes, Your Honor. In this case, at several points, we asked the immigration judge what she was interested in. And it's important to remember that this was at first a suspicion of terrorism. I'm not worried about the record. I'm informed of the record. I know what you asked. But my question is this. Is there anything in the decision of the IJ or the BIA which tells us that part of the considerations which those entities undertook was that this was not a bona fide marriage? The third factor that the BIA said was that he married a woman he barely knew to facilitate normalization of his immigration status. That was interpreted by the government attorney in their brief to the BIA as saying that it wasn't a bona fide marriage. If it was a bona fide marriage, it wouldn't matter if they married after only knowing each other for a short time, because that happens to people. And the fact is that because they stayed together for four years and moved around the country together and he supported her and all the other issues of the abuse show that it was a bona fide marriage. Which evidence you didn't present because you were told by the IJ it wasn't necessary. That's correct. Well, is that correct? I don't see where the IJ said it was necessary. Can you point me to the record? Let's deal with that. Well, in four different places, I asked the immigration judge, before I start examination of Mr. Kawan, in as much as the USCIS, the Department of Homeland Security people that adjudicate these petitions, in as much as they've determined that it was a bona fide marriage, any underwent abuse, are you interested in me discussing those issues with you or examining the client? And she said, we don't need to go through those issues. Let's just go on to the record. I mean, you say that and you're brave, but I don't see it. I'm not entirely sure why the IJ, I mean, it's your burden to put on your case, why the IJ has to tell you what you need to put on and what not. At the administrative record at 277, she says, I do take the trial attorney's point well that it's a lengthy story that does not have to be told and won't need to be told if, well, it won't have to be told if the court does not need to hear it, or secondly, there's a grant of baddest spouse protection by INS. I'm sorry, so what does that tell you? It doesn't tell you don't bring that in. No, it doesn't say anything like that. It tells me she tells me that I don't need to hear the whole story about if it's approved and then it was approved twice. And then later at 280, she says if the application is approved, what line? Oh, I have to get my own copy of the record. It looks like if the application is approved, then we'll determine at the status call whether or not testimony would be necessary and the service could be prepared to indicate what topics they would want to question. So this is curious that the application was approved. Yes. But then that removed any requirement that at that stage of the proceedings, you bring any in any of this information. But then at three. That's great. But at 325 application approves, then we'll determine that the status quo. Right. Then this is certainly not a determination. You don't need to do it. This is not an indication. You don't need to do it just as if it is approved. We'll talk about it later. Right. But then at 325. OK.  I'm sorry.  OK. I'm at 325. Before I ask the judge, I'd like to inquire of the court in as much as there's an approved I360. I wasn't anticipating asking Mr. Kawan questions about the nature of the relationship with his ex-wife and his abuse of her and just intended to go to the issues involved in his deserving adjustment to which the judge answered. You might just ask a few questions just to summarize that, and then you can move on to issues of discretion. Now, issues of discretion. I'm sorry. What does it say here? No, don't go into it. Sounds to me like you're saying go into it or here, whatever the idea was. Where do you say? No, don't bother going into this. I mean, you ask the question. You say, I don't want to go into it. I have some questions. Well, I don't spend all day on it. No. I mean, if the judge had said, look, there's no point in it because this has already been adjudicated. I don't have a decision to make. The answer would have been you can skip over this. And the answer is not you can skip over that. He said you must want to ask a few questions just to summarize. But this was to summarize. It wasn't to go through. What's the point of summarizing that point if it's already adjudicated by the 360? Because I believe what she meant when she said summarize was just you're going to be asking him some questions, mainly about this terrorism accusation, and just create a little bit of a predicate that he was married to this woman, that he suffered some abuse by her, that he moved out, and you don't have to. What is the point if your position is that is already adjudicated by the 360? It's deemed established. It's a fact. Then it's like a stipulation. There's no point in summarizing. There's no reason to present evidence to the I.J. that's your position because that's a matter that's already been decided by somebody else. The I.J. doesn't say yes, that's right, I buy into this argument. You don't have to present anything. We're going to take it as given. It says you might just ask a few questions. This business of sort of asking the judge for an advanced preview of what your case ought to be, but then you don't get a clear answer. You don't get an answer that says, yes, fine, don't do it, and you read that as some sort of limitation, some sort of promise on the judge's part not to consider the issue. I don't know. I find this particularly compelling. The reason why I think that is so, Your Honor. Do you have anything else? Is there any place else where the I.J. says, look, this is off limits, this has been adjudicated by the I.360? Yes, we do, Your Honor. At page 13, well, at the administrative record at 431. 431. Now, this is now we're moving, is that the same day? The earlier things were from May. The court in the 280s and 270s, as we read earlier, was May. This was before that petition had been adjudicated, the 360 had been adjudicated. This later statement was after the I.360 had been adjudicated. It was December 10th. And now you are looking at what page? Page 435. 435. And that is on May 27th, 2003. So now we're six months further down the road. I'm with you. And this is line 15, perhaps? It appears to basically come down. That's line 15. It appears basically to come down and no aggravated felony convictions, right? So it comes down to extreme hardship and discretion. So we can limit the scope of the testimony. This is you speaking, right? No, that's the judge. He says, so we can limit the scope of the testimony to extreme hardship, Mr. Montag. Right. And then I said, yes, Your Honor. No, I'm sorry, but this is now in May. You've had a hearing in December. This is now six months later, and the judge is telling you what's left as of this point. But he says that, but this is after the judge is a woman. But this is after the battered spouse approval comes from immigration. The approval had come as of December. Because here you are back in December 10th, 2002, and you said, we have an approval, I-360. Okay? So you have a hearing in December. You ask this question. You get this ambiguous answer, which at best to me reads like, yeah, you better ask some questions on this because it's not resolved. And then you are now six months later in May, and you're asking, well, what's left to do? And the judge is saying, well, we can limit the scope of the testimony now to extreme hardship. And that doesn't mean that there was never an issue of that sort. It looks to me like a summary of where you are now in the process. When the immigration judge tells me in December to just ask a few questions and then move on to the guts of the issue, which is whether the man is a terrorist, and sitting there is an FBI agent and a Navy investigator who were purported to be coming to tell the court why he's a terrorist, and that's what the focus was and that's what the interest is all along. And so she says ask a few questions. I do understand your position, but I personally am not persuaded. I mean, you want to say, look, the district judge's handbag, I mean, the I.J.'s handbag this by saying you don't need to present any evidence of this issue. I just don't see it. What it looks like to me is that if the I.J. had wanted to say, yes, I feel bound by the I.C. 60, that she would have said that. She would have said don't present any evidence because the matter is resolved. It's been done. Instead, she says, you might want to ask a few questions. So, you know. Can I just say this one brief more thing? My interpretation of her words, ask a few questions, would be in the context of setting a context for who the gentleman is just for making a record, the way I would ask him his name and his birthday and where he was born, even though everybody knows where. It's entirely possible that that's how it is. But if you if you want to extract, I mean, you went to the judge. It's not something the judge came to you and said, look, you don't have to present this here. And you said, do I have to present this kind of case? And you want to extract from the judge some sort of commitment that this matter has been adjudicated by the prior by the approval I.C. 60. You just didn't get that. The I.J. doesn't say what you want her to say. She doesn't say, yes, I am bound by the I.C. 60. And we do have precedent. What is that case? Matter of that the I.J. then relies on. Barth. Barth. Thank you. The matter of Barth that says the I.J. is not bound by it. And so it's, you know, this precedent that says I.J. is not bound. The I.J. says nothing at all that says, yes, I am bound. You would like her to say that. You could have asked her another question. You say, well, Your Honor, are you bound? Are you in fact bound by this? Are you putting Barth aside? Do I understand correctly what the court is ruling, that this is a matter that the court feels has been adjudicated by the I.J.? You could have asked a bunch more questions to nail it down, if that's what you really thought was going on. Well, I think that's not only what I think was going on, but that was going on, because, like I said, this was a terrorism case at the time. And the Barth issue, I mean, we've talked a lot about what I thought she meant and what she meant. But the Barth issue is important for another reason. And that's because in this case, there was a very determined, under a strict statutory scheme, and this court's also its views about the nature of evidence, that there was a battered spouse finding. And Barth was about an I-130, which is where you send your birth certificate and your marriage certificate to immigration, and they say, okay, it's a marriage. Unlike this I-360, which is a very rigorous examination with lots of documentation to determine whether he's a battered spouse. And in this statutory and regulatory scheme, for the immigration judge to say, I don't care about any of that stuff, and then she comes up with that, she didn't say, I don't care about any of that stuff. You ask, I wasn't anticipating asking Mrs. I'm reading 325. I wasn't anticipating asking Mr. Keewan questions about the nature of his relationship with his ex-wife. And the answer is, you might want to ask a few questions just to summarize that, and then you can move on to the issue of discretion. In other words, the burden of proof is still upon you to show us a bona fide marriage. You were cruising on the idea that the battered spouse thing was going to work. Because the regulatory and statutory scheme says that once that decision is made, then that's it. And for the immigration judge to come into, after that's all done and all the adjudication is done twice, and then say, that stuff is immaterial to my concerns, and then come up with three illegal reasons to deny him adjustment. Let me ask you this question. I read from this record that the petition, the I-360 is still approved, and your client could pursue it at the consular office abroad. Is that? It's correct. Am I misreading the record? It's correct. So the IAEA doesn't overturn, doesn't vacate this 360 in any sense. That's still alive. And he could take it to Cairo. Except that when you get deported, then they're subjected to a 10-year bar from coming back to the United States. So he could come back in 2013. Because he didn't get Kavan to a departure. That's right. She denied him that as well. Hernandez versus Ashcroft. Was the issue in that case whether you can go through the discretionary bar and review a discretionary decision if the exercise of discretion was illegal? Was that one of the issues in Hernandez versus Ashcroft, 345 Fed Third? The issues in Hernandez was whether if the immigration judge or the BIA reads in a requirement that's not in the statute, whether this court is barred because it's generally a discretionary determination, whether this court has jurisdiction to hear it. Medina Morales and Lal and Hernandez versus Ashcroft may stand for that. If the BIA's imposition of requirements for discretionary relief had no basis in statute or regulations, then it's an abuse of discretion. And what were the considerations that have no basis in statute or regulations that the IJ used in denying discretionary relief? This is in Hernandez? No, in this case. Well, the pre- Some part of the exercise of the discretion was not authorized by statute or regulations. Preconceived intent. The board has decided in matter of cavasos in this court, in Cho versus INS, that because these bars for preconceived intent were taken out as a basis to deny adjustment, this court said that by using that as a discretionary basis, you're essentially reinstating the statutory bar that was removed by Congress. Well, what do you do with the IJ side's matter of Batista and Cho versus INS, 11 Fed Third out of the Ninth Circuit? Well, I think that Cho v. INS stands for saying that preconceived intent cannot be a basis to deny adjustment of status. All right. Let's grant you that for the purpose of argument. Preconceived intent might be wrong. What are the others that he shouldn't or was barred from using? Employment without authorization. In the board's own decision in matter of con, the board decided that- Remained here in violation of the law and worked in the United States illegally, according to you. So you say he shouldn't use that. What are the others? Other cases? No, what are the other factors that the IJ relied on that the IJ was barred from relying on by rule or regulation? The last one was that he married, where she says he married a woman that he barely knew to facilitate normalization of his immigration status. And what- Where is that part? What if he would admit it? Yeah, the marriage was a sham. I married her just to try to get into the country. You can't consider that in a discretionary- She can, but that's not what she's saying. Firstly, the- But he found that it was a- No. So that's not barred, though. That arena, that area is not barred from consideration. No. Now you're quibbling with the findings. No, because she's- The board isn't saying- And this is the board, not the immigration judge. The board is saying that- Is not saying that it's a sham marriage. It's not overturning- The board isn't overturning the findings that- The twice-made findings by CIS that it- You know, in the I-360, that it was a bona fide marriage. The board is just saying that- Is just quoting- Or finding that it was a woman he barely knew to facilitate normalization. Now, there's no good evidence that it was to facilitate normalization. But the other part, that as a woman he barely knew, is just a- In light of the fact that there's evidence that- Lots of evidence that it's a bona fide marriage, to say that he barely knew her at the time he married her is not- Is a silly reason to say that somebody shouldn't be allowed to adjust status when they're a battered spouse. Lots of people marry people they know for a short period of time and have long, happy marriages. The IJR also relied on the heavy cross-examination where your client refused to admit that he knew that marrying a U.S. citizen would help him adjust his status. He just steadfastly refused. And the IJR said, I find that very hard to believe. That's the kind of thing that people who are looking for a way of legalizing the position tend to be aware of. And seven days after their marriage, she files an I-30. I just have a very difficult time believing that as of the date he married her, he has no idea. And seven days later, she's filing an I-30 for him. So essentially what she found- Well, not essentially. In fact, what she found was that her client lied on the stand about this. And that colored the marriage in that this was a marriage she assumed he knew- Or she inferred that he knew full well would help him adjust his status. And entered into for that purpose. I don't see why that's not a valid basis for exercise of discretion. I would say, firstly, I don't think- I mean, I understand that she says that. But it's also true that there's nobody in the immigration world who could have said with any degree of certainty that if you enter as a crewman, which has restrictions, overstay, be illegal for a while, that just ipso facto marrying a U.S. citizen gets you papers. The I-130 is also signed by his wife, not by him. I understand that's not what you- But I've read the cross-examination, and your client stumbles back and forth. He says, oh, it's a natural process, and then he goes back on it and all that. I have a very hard time believing that a trial fact, although it might take the position you're not advocating, a trial fact can't look at that cross-examination and say, look, the guy lied. He knew full well that that was the intent. That's why he married her. Maybe he didn't have 100% assurance that that would happen. But it's sure a good hope. And my guess is there are very few people who come to the United States in the hopes of staying here that don't realize that marrying a U.S. citizen is one of the sort of gold standards in terms of getting yourself legalized. The fact that his wife filed an I-130 for him a week later is not material to what he did, because it was her papers that she filed on his behalf. She just did it on her own? We have to infer that she woke up one morning and said, I'm going to go down to, you know, I have more work to do today than to seven days before my marriage to go down and visit the INS office because they're so nice down there. You know, it's so pleasant to wait in line. And, you know, you've been down there. I sure have, Your Honor. And I agree with you, it's not pleasant. But it's also something that she did. And also, why would you – What do we do with Exhibit 50, which is her statement to the FBI that the reason that she'd drawn the previous petitions was because her husband, in quotes, was using her to obtain lawful permanent residence, in addition to not paying taxes and working without authority. So she comes in on Exhibit 50, at least, and says he was using me to try to gain immigration status. She said before 9-11, you know, the attacks, that he was working illegally, not paying his taxes. After 9-11, she started saying the terrorism stuff because it resonated. She says she was a disturbed, ill woman. And the record bears that out, the things that she did to him, psychological evaluations of her in the record. She was a bad person, and she lied to do things to hurt him. And she lied to keep him under her thumb. And she told him, if you leave me, I am going to go to the government, and I'm going to make up stuff about you and get you in all kinds of trouble. And by golly, he left her, and she told the government he's a terrorist. They locked him up. They kept him locked up for 16 months. So you're kind of re-arguing the issue, and the IJ heard a lot of that stuff and concluded nonetheless that the whole thing was a sham. Yeah, it was a little more than her testimony. There was also the sort of running into the base saying he was lost. I mean, it turned out he was lost, but it was mighty suspicious getting lost. Well, I can say this for a fact, that I got lost driving up there. And I had hundreds and hundreds of people tell me that they got lost. I'll say that the NSA will surveil you. I'm sure they listen to my conversations with him when he calls me on the phone. But the bottom line is. It would be more so when he would call you from Cairo. Let's hope it was just limited to that. Would you be satisfied if your man got voluntary departure so he could go back to Cairo and make an application on I-360? I believe that the State Department would have respected the determination of USCIS. They would have to. They don't have this discretionary reason to dig things up that aren't there. They would have respected the VAWA Act and Banners About Protection. Is that a way of saying yes? Yes. That's my short way of saying yes. Thank you. Thank you. Thank you. Counsel, would you consider my last question to Mr. Montag and state the position of your client? Would that not be a way to mediate and determine this matter? No, Your Honor. Respectfully, because the petitioner, first of all, never appealed the denial of voluntary departure. And so that issue is not before the court. Has anybody reinstated? No, Your Honor. Who are you? Pardon? Thank you. Mary Jane Kondo. I thought you meant who am I representing. I'm Mary Jane Kondo, representing the respondent, United States Attorney General. Thank you, Your Honor. To start out, I think I can help in the jurisdictional questions that the Court had initially. It is our position, as you know, that the Court lacks jurisdiction because the Board's decision is purely discretionary. What about this Hernandez v. Ashcroft case and the Medina case and the Lal case that the other side says allow you to penetrate that barrier if the discretion was, exercise of discretion was based on factors prohibited by statute or regulation? The review in all those cases was abuse of discretion. I mean, those cases were decided when the Court could review the discretionary decisions. That's what I was afraid of. Right. So those don't. Hernandez also said that this was a non-discretionary decision. Right, right. The question of whether or not there is battery is a non-discretionary. It's a factual decision. Right. So that sort of took it out of the discretionary area. Yes, Your Honor. But what I wanted to also say about the Court's jurisdiction is following the Real ID Act, which is actually consistent with the Court's review before the Real ID Act, the Court can look at legal issues and constitutional claims. But, of course, our position here is there are no colorable legal issues or constitutional claims here. At base, what the petitioner is What do you mean by legal issues and there are no legal issues? Right. The other side says there are a whole bunch of legal issues, violations of statute, rule, and regulations in the exercise of discretion. Those are legal issues. Right. Well, what our view is and what this Court has found, there can be a legal issue in a discretionary determination, for example, where the board or the immigration judge applies the incorrect standard. You know, for example, if it's supposed to be exceptional and extremely unusual hardship, the judge says, well, you know, I don't like the outfit you're wearing today. It departs from the precedent. So we would have jurisdiction to pierce the jurisdictional bar to discretionary decisions if the BIA or the IJ had said, for example, well, he's Egyptian. I don't like Egyptians. He's out of here. Yes. We would have. Yes, Your Honor. Well, isn't that equivalent to what he's saying? They used all these prohibited factors. Well. Assuming for a second that they are prohibited. They're not prohibited, Your Honor. Because at base, what his claim is, is that the judge, when it's looking at the adjustment of status application, cannot in the exercise of discretion look at the issue of whether the petitioner entered the marriage in good faith. That was the judge's decision, and that was the particular decision about this marriage, and that was exactly what the board affirmed in the exercise of discretion. Of course the judge can look at that. I mean, it absolutely strains credulity to make that claim. I'm sorry to say it, but it's true. It's a two-step process, I think, as the court well knows. Any kind of adjustment. First you do your visa adjudication. That's under 1154. In this case, the document that had to be filed was the I-360. In regular marriage cases where the person doesn't self-petition, it's the I-130. There's a second step to that, and that's what happened before the immigration judge. And the second step is the adjustment of a status. That's under 1255. The requirements of 1255 are simple, and what they include, Aileen has to make the application, but number two is the important one. The judge has to determine whether the alien is eligible to receive an immigrant visa. The judge has to make a second determination of whether the alien is eligible to receive that immigrant visa. That's what the judge has to do. And to say that the judge cannot look at whether he can. Bark says he can.  Right. Yes. Now, I heard Mr. Montag saying. And this Court's decisions, too, Your Honor. I'm sorry to interrupt, but two courts of this decision also said. Now, counsel is correct. All three of those decisions are on the I-130, not the I-360. Right, which is what I was going to ask. I think Mr. Montag is arguing that the I-360 is a much more complicated process and therefore is entitled to more deference or maybe conclusive deference. No, certainly no. I would obviously disagree with that, Your Honor, because as I was saying, it's a two-step process, and it's no different whether it's an I-130 or an I-360. The petition, the visa petition, whether a petitioner applies for a beneficiary or whether someone who claims to be battered petitions for themselves, that's under I-1154. Then you have the adjustment under both. No matter what the petition was, they both are adjusted under I-1255. So they feed into the same decision-making process. Yes, Your Honor. So, therefore, it doesn't make a difference that the Court's two prior decisions, which are Ngongo in 2004 and Agiamond in 2002, those were I-130 decisions, but both said that if there's new evidence, well, actually, what they said is the judge does have the authority to look at the bona fides of the marriage. Why not? What then happens to the I-360? You have this initial adjudication process, and then you have another that seems to say the requirements of the I-360 are met, which I guess is a bona fide marriage and maybe some battering or something like that, right? Yes. And then you have a determination by the IJ in an aggressor proceeding that says, no, the marriage wasn't bona fide. I don't understand how the I-360 then survives for later adjudication, which is what's the name of the immigration lawyer in front of the IJ? He seemed to argue that. Zapata. Ms. Zapata. Ms. Zapata seemed to argue that, you know, he can still go there, he can still get this matter adjusted by going to a consulate abroad. I think that. And I'm a little baffled how that can be once you've had a wiseness adjudicata of that issue. I think that she was correct in saying that, and, frankly, Zapata, the immigration attorney below was a woman. Oh, okay. Ms. Zapata. Okay. I think she was correct in saying that, but I think it's just the practical matter that because the IJ, because it's different agencies, in short, the I-360 was the approval of the visa petition was done by Department of Homeland Security, one division, and the IJ's decision is the Executive Office for Immigration Review, and practically I guess the DHS doesn't go back and revoke that petition which was granted. It's still out there. It's still out there. He could still go to Cairo or wherever and get it. Yes. But he has a 10-year bar because the IJ didn't grant the bond. Yes. But I'd also like to point out, if he did go to Cairo and do it, what counsel said was incorrect. The statute requires, if he goes to Cairo, that, I'm sorry, the regulations require that the consulate in Cairo make the determinations again of whether he's eligible for that visa. And in addition, the statute. I thought what I heard Mr. Montag say is that the consulate would never contravene the determination of DHS on this. The consulate is required by the regulation to make sure that DHS's determination is correct. They're not going to just, the consulate, I mean, practically speaking, Your Honor, that's why immigration counsel want to have their clients adjusted here instead of going abroad. Because the consulate doesn't just take it and say, well, DHS granted it, so we're giving you an immigrant visa. They do their own adjudications. And they're required to do that under regulations. Unfortunately, it's 22. And those are non-review because they're abroad. Yes. Well, and in addition, there's another in the statute, 1154E, which I don't think we cited in our brief. Nothing in this section, 1154 is the section about the visa petitions. So that's the first step that the DHS did. Nothing in this section shall be construed to entitle an immigrant, and I'll jump ahead, let's see, to be admitted to the United States as an immigrant, if upon arrival at a port of entry to the U.S., he is found not to be entitled to such a classification. That's another step. If they get their visa abroad, the consulate has to review that determination. When they get to a port of entry here, the immigration inspector looks at that again. And the fact is, this, if I may continue just briefly, I see that I'm out of time. Just briefly. Thank you, Your Honor. There was new evidence. In practical terms, just looking at this case, this case is a good example of why the judge must be able to look at that factor. For example, the new evidence before the immigration judge that was not before the adjudication section in the application packet the petitioner sent in, there were four levels of it. His admission in his test, the petitioner's admission in his testimony that before he came here, he decided he wanted to be admitted to stay here and legalize his status. He said, I wanted to live here legally. I'm young and ambitious. Everybody does, you know. They do. And there's nothing wrong with that, Your Honor, except it's the preconceived. I mean, it's hardly a new fact. But, you know, Your Honor, I certainly don't blame them at all. But, for example, it's not the sort of situation that someone came here as a visitor and they met someone and fell in love and then wanted to stay. I mean, people do have lives at home. Secondly, the fact that he married his wife only three or four weeks after meeting her. You know, I think we are familiar with that. Okay. Thank you. Thank you. I think we've already had – I think we understand both parties' positions in this case very well. Thank you very much for this thorough argument. The case is now submitted. We'll now hear.
judges: Kozinski, Trott, Bea